# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRANCISCO SALDANA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 08-1963 (JDB)** |
| ) | |
| **FEDERAL BUREAU OF PRISONS,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |


## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Francisco Saldana filed a *pro se* complaint under the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP"), the Executive

Office for the United States Attorneys ("EOUSA"), the United States Marshals Service

("USMS"), and the Federal Bureau of Investigation ("FBI"), each of which is a component of the

United States Department of Justice ("DOJ"). Each defendant component has filed a dispositive

motion, to which the plaintiff has filed oppositions.[1]  In addition, Saldana has moved for an order

requiring the BOP to provide additional information and a copy of mail logs. The motions filed

by the BOP and the EOUSA will be granted, and Saldana's motion for an order directing the

BOP to provide copies of mail logs will be denied. Ruling on the motions filed by the USMS

and the FBI will be deferred, and the USMS and the FBI will be required to submit supplemental

declarations.

---

[1] Although Saldana failed to file three of the oppositions, he served them on the adverse
parties, who in turn, filed them on the Court's docket.

## BACKGROUND

Saldana is currently a federal prisoner, having been sentenced in 1996 to serve life plus 15 years in prison after convictions for drug trafficking and weapons violations. Through FOIA requests dating back to 2004 directed to various offices, he has sought information relating to his investigation, prosecution, and defense, including summaries of specific conversations he had with a federal agent before he was arrested and conversations and visits he had with that agent and other persons while in custody before being sentenced.

## I. USMS

In August 2004, Saldana addressed a FOIA request to the USMS Office of General Counsel, seeking "all records, documents, and information you have in your files pertaining to me or mentioning my name," and specifically requesting copies of documents showing the dates, time and names of the marshals who had custody of him or were assigned to his case, and copies of records showing the dates and times of his departures and returns to the Federal Detention Center ("FDC") in Miami, Florida. USMS Mot. to Dismiss or for Summ. J. ("USMS Mot."), Declaration of William E. Bordley (Mar. 26, 2009) ("Bordley Decl.") Ex. A. Without providing any rationale in support, Saldana also requested a fee waiver or reduction, but stated that if the waiver was denied "I hereby agree to pay the fees for search and duplication while retaining my right to appeal your denial of fee waiver." *Id.* His request was assigned No. 2004USMS7629. *Id.* Ex. B.

The USMS maintains a Prisoner Processing and Population Management/Prisoner Tracking System ("PPM/PTS") and a Warrant Information Network ("WIN"), which contain the agency's records related to the apprehension of fugitives, the receipt and processing of federal

detainees, and the transportation, maintenance and custody of federal prisoners from the time of

their arrest or remand until the prisoner is committed to the Attorney General for service of

sentence. Bordley Decl. ¶¶ 16-17. Once a prisoner is either committed for service of sentence or

removed to another district, that prisoner's file is closed and transferred to a Federal Records

Center ("FRC") for storage. *Id.* ¶¶ 19-21. Saldana's PPM/PTS and WIN records had been

transferred to the FRC. *Id.* ¶ 19. Although the USMS requested retrieval of Saldana's file, staff

at the FRC could not locate the file. *Id.* ¶ 22. The record shows that the USMS never

communicated this information to Saldana, but mentioned it only in the agency declaration filed

with its dispositive motion. A search of the PPM/PTS nonetheless located two documents

pertaining to Saldana, which were produced to him. *Id.* ¶¶ 19, 23. The USMS also searched the

DOJ's Consolidated Asset Tracking System ("CATS") and located approximately 498 pages of

potentially responsive records. Of the responsive records located, the USMS released 100 pages

of records without charge, 48 of which had minimal redactions pursuant to FOIA Exemptions 2

and 7(C), 5 U.S.C. §§ 552(b)(2) & (7)(C). *Id.* ¶ 6 & Ex. E. The USMS denied Saldana's request

for a fee waiver, informed him that copying the remainder of records for release to him would

incur an estimated fee of $40, and stated that further processing depended on his agreement to

pay the fees. *Id.* Ex. E. It also suggested that if Saldana wanted to reformulate his request to

reduce costs, he should contact the author of the USMS letter. *Id.*

Saldana did not agree to pay the $40 copying fee. But soon after receiving the USMS's

response, Saldana did undertake to "reformulate" his request by expanding it to include

> copies of all written reports made by any U.S. marshal, other agents assigned to
> work security concerning United States of America v. Francisco Saldana, case
> No.: 95-605-CR-Nesbitt, specifically reports filed by U.S. marshal Correal, . . .

[and] copies of all written notes concerning his [Correal's] contacts with"
[Assistant United States Attorney ("AUSA")] Allyson Fritz and Jonathal Loo
[sic], and other federal/state agents.

*Id.* Ex. F at 1-2. The USMS treated this reformulated request as a new one and assigned it

No. 2005USMS8415. *Id.* Ex. G. The USMS then informed Saldana that a search for the records

identified in No. 2005USMS8415 failed to locate responsive records, and that he had 60 days to

appeal this determination. *Id.* This response did not mention Saldana's PPM/PTS and WIN file

that had not been located by the staff at the FRC.

     In three subsequent letters Saldana submitted additional requests, framing them as part of

his initial 2004 request. *See id.* Exs. H, I, J. The USMS assigned No. 2007USMS10808 to these

three new requests, and informed Saldana that a supplemental search had not located any

responsive documents, that it had no additional documents pertaining to his criminal prosecution,

and that he had 60 days to appeal this determination. *Id.* Ex. K. It also informed Saldana that

most of the 400 pages related to his 2004 request that had been located but not released were

seized asset records. *Id.* This response also gave no additional information regarding the

missing file at the FRC.

     Saldana appealed to the Office of Information and Privacy ("OIP"), which affirmed the

USMS's response. *Id.* Ex. M (denying as moot his "appeal from USMS's failure to respond").

Twice thereafter Saldana attempted to expand the scope of No. 2007USMS10808. *Id.* Exs. N, O.

The first such correspondence was not directed to, and did not reach, the USMS office that

handles FOIA requests. The second request sought records that are not maintained by the

USMS, and the USMS directed Saldana to submit his request elsewhere.

The USMS has moved for dismissal or summary judgment on the ground that Saldana has not exhausted his administrative remedies. It maintains that because Saldana did not pay the required $40 copying fee related to the 400 pages of responsive documents not released to him, he did not exhaust his administrative remedies and is therefore not entitled to judicial review. Reply at 14. In the alternative, the USMS argues that its search was adequate and it has released all non-exempt information to which Saldana is entitled. *Id.* at 7-8. Saldana contends that he is entitled to a fee waiver, Opp'n to USMS Mot. at 20-21, and that because he reformulated his request, he is not subject to paying the processing fees, *id.* at 17-18. He further argues that the searches the USMS conducted were not adequate, as they did not include an interview of Deputy Correal or a search of his "internal or external office," and because the file stored at the FRC was not located and reviewed for responsive documents. *Id.* at 7. Saldana does not raise any challenges with respect to the USMS's invocation of FOIA Exemptions 2 and 7(C).

## II. FBI

In January 2005, Saldana wrote to FBI headquarters ("FBIHQ") asking for "all records, documents and information [illegible] in your files pertaining to me or mentioning my name," and additionally mentioning specific records and categories of information he was seeking. FBI Mot. for Summ. J. ("FBI Mot."), Declaration of David M. Hardy (Mar. 26, 2009) ("Hardy Decl.") Ex. A. The FBI identified the request as No. 1014622-000, *id.* Ex. D, and searched for records indexed to Saldana's name in its FBIHQ's automated index to its Central Records System ("CRS"). *Id.* ¶¶ 30-35. That search identified potentially responsive material, which was "unavailable and has been placed on 'locate.'" *Id.* Ex. E. (The Court understands "unavailable" to mean that the file could not be found at the time. The Court does not know, and the Hardy

Declaration does not reveal, the significance of a file being "placed on 'locate.'")  In January

2006, Saldana sent another FOIA request to FBIHQ, this one identifying the case number for his

criminal prosecution and reiterating his request for some of the specific information mentioned in

his request the prior year.  *Id.* Ex. F.  After receiving no response despite making interim

inquiries, Saldana filed an appeal, which was denied as moot because there had been no adverse

determination.  *See id.* Exs. G, H, & I.

Saldana sent two more inquiries about No. 1014622.  *See id.* Exs. J & K.  In response, the

FBI opened a new request, No. 1080531-000, *see id.* Ex. L, apparently based on Saldana's

January 2006 request, which specifically sought records of statements made to a certain named

FBI agent on October 11, 1995, and copies of all 302's[2] filed by that agent for which Saldana was

the source of information, *see id.* Ex. F.  A search of the main files[3] in FBIHQ's CRS did not

locate any responsive records.  *See id.* Ex. M.  The FBI's response to Saldana did not

acknowledge or provide any additional information regarding the file that was "placed on

'locate'" more than two years earlier.  *See id.* Exs. E & M.  Saldana's appeal from this

determination was unsuccessful.  *Id.* Ex. R.

In the meantime, Saldana directed a FOIA request to the FBI's Miami Field Office

framed as an add-on to No. 1080531-000, one of Saldana's earlier requests directed to FBIHQ.

The substance of Saldana's Miami request was for "a copy of the 302 filed by Agent [] on April

of 1996."  *Id.* Ex. S.  He also requested a copy of the three-way, three-party telephone

---

[2]  This is a reference to FD-302, a form used by the FBI to memorialize an interview.

[3]  "Main files" in FBI nomenclature are those files identified by the subject of their
content.  If the file is about a person, it is identified by the person's name.  Hardy Decl. ¶ 31.

conversation between Saldana, his ex-wife, and the agent.  *Id.*  This request to the Miami Field

Office was assigned No. 1104474-000, *id.* Ex. T, and a search of the CRS index in the Miami

Field Office identified no responsive records, *id.* Ex. U.  Saldana appealed, *id.* Ex. V, and the

OIP affirmed the FBI's determination, *id.* Ex. X.

Saldana filed this lawsuit in November 2008, prompting the FBI to conduct another

search of indexes to the FBIHQ and Miami Field Office CRS, and to search for the first time in

its Electronic Surveillance system ("ELSUR").  *Id.* ¶ 41.  These additional searches located

responsive files only in the Miami Field Office.  *Id.*  The Hardy Declaration does not indicate

that these searches of the FBIHQ files identified the file that had been "placed on 'locate'"  More

importantly, it does not explain why a file that was identified in a search of the FBIHQ index to

the CRS in 2005 was not also identified in each subsequent search of the FBIHQ index to the

CRS.  After the responsive records from the Miami Field Office were identified and reviewed, 55

pages were released in full or in part to Saldana.  *Id.* ¶ 42 & Ex. Z.  The only information

redacted was withheld pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) &

(7)(C).  *Id.* ¶ 42.

The FBI has moved for summary judgment.  *See* Reply at 2, 5-7.  Saldana asserts that the

FBI's searches were inadequate.  Opp'n to FBI Mot. at 4-11.  Specifically, he maintains that they

were inadequate because the FBI did not interview a certain named FBI agent about the

documents requested, or search his "internal or external office," or the offices of a certain named

ATF agent (who, in any case, was not mentioned in the FOIA requests), *id.* at 6, and failed to

search its "Tickler" system, *id.* at 7.  Saldana does not raise any specific challenge regarding the

FBIHQ CRS file that was "placed on locate." Nor does he challenge the legitimacy of the FBI's use of FOIA Exemptions 6 and 7(C) to withhold certain information. *Id.* at 12-13.

## III. BOP

In a FOIA request directed to the BOP's Southeast Regional Office dated January 1, 2006, Saldana asked for "copies of the existing log entries maintained by the [FDC], Miami, FL for October 11, 1995 through May 6, 1996 . . . ." *See* Compl. App. A. After correspondence to resolve an initial confusion, the BOP notified Saldana that proceeding with his request, identified as No. 06-2709, would incur an estimated search fee of $392, and that Saldana would have to either agree to pay the fee, modify his request to meet a lower fee, or settle for the first two free hours of searching. *See* BOP Mot. to Dismiss or for Summ. J. ("BOP Mot."), Declaration of Christine Greene (" Greene Decl.") Att. 3. The BOP's letter, dated March 16, 2006, further informed Saldana that if he was not satisfied with this determination he could appeal within 60 days. *Id.* By letter dated May 22, 2007, and expressly referencing No. 06-2709, Saldana repeated his request for visitor logs from the Miami FDC, and expanded his request to include telephone, visitor, and special housing unit logs, which he had not previously requested. Moreover, he also stated that he was "requesting all records, documents, and information you have in your files pertaining to me or mentioning my name." Compl. App. D at 4-5. The BOP has no record of receiving this correspondence. Greene Decl.¶ 10.

Saldana alleges that he also submitted a FOIA request dated January 30, 2007 to the BOP's Southeast Regional Office. Compl. App. D at 1. This request, which does not reference No. 06-2709 and appears unrelated to the subject matter of No. 06-2709, seeks only "the party or agency to place the separation order between myself and my co-defendants" in his criminal

-8-

prosecution. *Id.* The BOP has no record of receiving this request. Greene Decl. ¶ 9. In a letter dated August 22, 2007, Saldana appealed the BOP's lack of response to his January 2007 request about the separation order. Compl. App. E. Then, in a letter dated December 4, 2007, and containing no reference to No.06-2709, Saldana wrote to "add three additional requests to my January 30, 2007 request filed with your agency." The additional three requests sought recordings of telephone conversations, and did not appear related to his January 2007 request. Compl. App. F at 2-3. The BOP did receive this December 2007 letter, assigned the request No. 2008-2363, and on January 9, 2008, responded to Saldana that it did not create transcripts of telephone conversations and that the audio recordings of the requested telephone conversations had already been destroyed. *See* Compl. App. F at 4.

In a letter dated September 24, 2007, addressed to the BOP's FDC in Miami, Saldana posed two questions, one asking approximately how long it takes to process an inmate from the time the United States Marshal relinquishes custody until the inmate is back in his assigned unit, and the other asking whether the inmate has access to a telephone during this period. *See* Compl. App. F. at 1. This letter requested information, but not in the form of existing agency records. *See id.* The BOP has no record of this letter.

The BOP has moved to dismiss Saldana's action against it because Saldana neither reduced the scope of his January 2006 request nor paid, or agreed to pay, the associated search fee, and therefore has not exhausted his administrative remedies. Reply at 1-2. Saldana, characterizing his multiple requests as one FOIA request and four amendments thereto, Compl. ¶¶ 8-13, argues that he was not obligated to pay the estimated processing fees because he reformulated his request, and that the BOP did not provide responses as required by law. Opp'n

to BOP Mot. at 7.  He also argues that the BOP should not be allowed now to claim that it did

not receive some of his requests, because even if the BOP did not receive them in the first

instance, they were appended to an appeal he filed.  *Id.* at 15-16.

## IV.  EOUSA

Saldana addressed a FOIA request dated January 4, 2006, to the EOUSA, seeking "the

date the discovery order was provided to [his attorney]," and "copies of all 302's provided by [a

certain named] FBI agent . . . in this case, concerning myself."  EOUSA's Mot. to Dismiss or for

Summ. J. ("EOUSA Mot."), Declaration of John F. Boseker (Mar. 25, 2009) ("Boseker Decl.")

Ex. B.  This request was assigned No. 06-73.  Bosecker  Decl. Ex. C.  Four months later, Saldana

submitted an additional request seeking "copies of any correspondence" sent from United States

Penitentiary Allenwood, Whitedeer, Pennsylvania between August 1, 1996 and August 31, 1999,

to AUSA Fritz.  *Id.* Ex. D.  This request was assigned No. 06-1303.  *Id.* Ex. E.  By letter dated

February 27, 2007, and referencing both Nos. 06-73 and 06-1303, the EOUSA informed Saldana

that it had expended two free hours of search time, that it had located 32 boxes of records, and

that searching the 32 boxes would incur an estimated search fee of $3584, a sum he must pay

before the EOUSA would continue processing his requests.  *Id*. Ex. F.  The letter also suggested

that he could reformulate his request or identify some amount he would pay for a partial search.

*Id.*  Finally, the letter stated that the request would be considered closed if the EOUSA did not

receive a response from Saldana within 30 days.  *Id.*  Saldana sent at least two additional letters

which he characterizes as narrowing or modifying his requests.  *Id.* Ex. L at 1-4.[4]  Saldana's

---

[4]  Both of the letters that were received by the EOUSA were misdated by one year; the
remainder do not appear to have been received by the EOUSA at a time proximate to the date
they bear.  *See* Bosecker Decl. Ex. L.

letters reformulated his request by identifying — for some requested records only — a subset of boxes among the 32 he wanted to be searched. Because he narrowed the scope of the search with respect to only some records, practically speaking, he did not narrow it at all because all boxes would have to be searched for the other records he requested. Furthermore, his letters sought additional information not mentioned in the prior request. *Id.* at 1-4 (Letters received April 9, 2007 and April 25 2007) (identifying boxes for searching prior requested material, and adding requests for a summary of a witness's testimony, copies of all plea offers made, copies of "everything" pertaining to the disqualification of Saldana's defense counsel, and copies of an amended jury instruction). The EOUSA did not respond further. In August 2007, Saldana appealed the February 2007 response from the EOUSA, *id*. Ex. I, and by letter dated March 17, 2008, the DOJ's OIP affirmed the EOUSA's response, *id.* at ¶¶ 15-19 & Ex. K.

After Saldana filed this lawsuit, the EOUSA discovered that — in connection with a prior request not at issue here — Saldana had agreed to, but did not, pay a $140 search fee. *See id.* ¶¶ 6-7 & Ex. A. The EOUSA now asserts that his prior failure to pay, alone, is cause for dismissal of this complaint. *Id.* ¶ 21. Additionally, the EOUSA argues that Saldana's claim warrants dismissal on the ground that he did not pay the estimated $3584 in search fees in this case and therefore did not exhaust his administrative remedies. *See* Reply at 12-13. Saldana maintains that because he submitted "reformulated" requests, he should not be deemed to have failed to exhaust his administrative remedies. Opp'n to EOUSA Mot. at 5-8. The EOUSA counters that Saldana's reformulations did not narrow the scope of his request. EOUSA Mot. at 6 (citing Boseker Decl. ¶ 21.)

# APPLICABLE LEGAL STANDARDS

A court may dismiss a complaint or any part of it for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A FOIA plaintiff's failure to exhaust administrative remedies before filing a civil action is properly treated as a failure to state a claim upon which relief may be granted. *See Hidalgo v. FBI,* 344 F.3d 1256, 1260 (D.C. Cir. 2003). On a motion under Rule 12(b)(6) for failure to exhaust where "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment may be granted only where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.,* as opposed to evidence that "is so one-sided that one party must prevail as a matter of law," *id.* at 252. A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. The nonmoving party, however, must do more than merely establish some "metaphysical doubt;" rather, the nonmovant must come forward with "specific facts" demonstrating a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

Congress enacted the FOIA "to open up the workings of government to public scrutiny through the disclosure of government records." *Stern v. FBI,* 737 F.2d 84, 88 (D.C. Cir. 1984) (internal quotations omitted). The Act's policy of broad disclosure of government documents

was intended to "ensure an informed citizenry, vital to the functioning of a democratic society." *FBI v. Abramson,* 456 U.S. 615, 621 (1982). Accordingly, the FOIA requires an agency to "make records promptly available to any person." 5 U.S.C. § 552 (a)(3)(A). It does not "obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 152 (1980). Nor does it require an agency to answer questions, conduct research or provide opinions. *See Coolman v. IRS,* 1999 WL 675319, *7 (W.D.Mo. July 12, 1999) (finding that an agency is not required by the FOIA to answer questions, conduct research, create records, or provide legal opinions); *accord Barber v. Office of Information and Privacy,* Civil Action No. 02-1748 (JDB), slip. op. at 4 (D.D.C. Sept. 4, 2003) (stating that the FOIA defendant "had no duty to conduct research or to answer questions"). Thus, "[t]o the extent [a] plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests." *Anderson v. Dep't of Justice,* 518 F. Supp. 2d 1, 10 (D.D.C. 2007).

In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control, *Kissinger,* 445 U.S. at 150-51, that was reasonably calculated to uncover all relevant information, *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984), which either has been released to the requestor or is exempt from disclosure, *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001). To show that its search "us[ed] methods which can be reasonably expected to produce the information requested," *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), the agency may submit affidavits or declarations that explain in reasonable detail and in a

nonconclusory fashion the scope and method of the search, *Perry v. Block,* 684 F.2d 121, 126

(D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are

sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  A search need not

be exhaustive, *Miller v. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1985), and the adequacy of

a search is not determined by its results, but by the method of the search itself, *Weisberg,* 745

F.2d at 1485.  An agency's failure to find a particular document does not necessarily indicate that

its search was inadequate.  *Wilbur v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine*

*v. United States Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

As a matter of jurisprudential doctrine, a FOIA requester cannot maintain a civil action

unless he can demonstrate that he has first exhausted his administrative remedies.  *Hidalgo,* 344

F.3d at 1259 ("[T]he FOIA's administrative scheme favors treating failure to exhaust as a bar to

judicial review.").  In other words, exhaustion of administrative remedies is a "mandatory

prerequisite" to filing suit.  *Wilbur,* 355 F.3d at 676.  "Exhaustion does not occur until the

required fees are paid or an appeal is taken from the refusal to waive fees."  *Oglesby,* 920 F.2d at

66.  "Regardless of whether the plaintiff filed suit before or after receiving a request for payment,

the plaintiff has an obligation to pay for the reasonable copying and search fees assessed by the

defendant."  *Trueblood v. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996).  Even when

a fee assessment comes "after the filing of [the] lawsuit, [a] plaintiff is obligated nonetheless to

pay the fee or to seek from the agency either a fee waiver or a fee reduction."  *Maydak v. Dep't of*

*Justice,* 254 F. Supp. 2d 23, 50 (D.D.C. 2003).  Furthermore, DOJ regulations provide that where

a FOIA plaintiff has previously promised, but failed, to pay the related processing fees, the DOJ

component agency may refuse to process any new request until the arrearage is paid.

Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before the component begins to process a new request or continues to process a pending request from that requester.

28 C.F.R. § 16.11(i)(3).

A FOIA requester may be eligible for a waiver or reduction of fees associated with the request "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.11(k) (DOJ's regulations governing fee waivers/reductions). The requester bears the burden of demonstrating that he and his request qualify. *Physician's Comm. for Responsible Medicine v. Dep't of Health & Human Svcs.,* 480 F. Supp. 2d 119, 123 (D.D.C. 2007). "[C]onclusory statements that the disclosure of the requested documents will serve the public interest are not sufficient." *Judicial Watch, Inc. v. Dep't of Justice,* 185 F. Supp. 2d 54, 60 (D.D.C. 2002). A court's *de novo* review of an agency's decision on a fee waiver is limited to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii); *Physician's Comm.,* 480 F. Supp. 2d at 121 (citing *Nat'l Treas. Employees Union v. Griffin,* 811 F.2d 644, 648 (D.C. Cir. 1987)).

## ANALYSIS

Saldana disputes the various agency determinations regarding fee waiver, exhaustion and the adequacy of the searches. He does not dispute the exemptions asserted by the USMS and the FBI, which produced responsive records with information withheld on the basis of FOIA

Exemptions 2, 6 and 7(C), and a cursory examination of the claimed exemptions leads to the conclusion that they have been appropriately and legitimately asserted.

Saldana requested a fee waiver or reduction from the USMS and the FBI. His two USMS requests in 2004 and his 2005 request to the FBI provided no supporting rationale. *See* Bordley Decl., Ex. A, C; Hardy Decl. Ex. A. His May 2007 request to the USMS asserted only that "[t]hese  documents will also benefit the general public concerning the agency policy in investigating corruption in the U.S. Marshals office, and the request for waiver of fees is appropriate in this matter," *id.* Ex. F at 2 (spelling altered). The USMS affirmatively denied his fee waiver application, and the FBI never addressed it. It is not clear from the record that Saldana took administrative appeals with respect to his waiver requests to either agency. In light of the record facts, however, Saldana's conclusory statements do not entitle him to a fee waiver, and the USMS's decision to deny him a waiver will thus be affirmed.

**I. Exhaustion**

The record here shows that Saldana did not pay $140 in search fees that he had agreed to pay in connection with a previous FOIA request to the EOUSA. Boseker Decl. ¶¶ 6-7 & Ex. A. Therefore, pursuant to DOJ regulations, the EOUSA is entitled to refuse to do any more work on any requests from Saldana until he has paid the $140 in arrears. 28 C.F.R. § 16.11(i)(3). Furthermore, the EOUSA is also entitled to demand full payment in advance of processing any other requests from Saldana. *Id.* Saldana argues that because he reformulated his request, the agency's failure to respond is illegal. This argument is frivolous. The record plainly shows that Saldana's reformulations only expanded, and did not reduce, the scope of the search required for the documents he was requesting. There is no genuine issue as to whether Saldana narrowed his

search request or paid the required fee. Therefore, the EOUSA has shown that Saldana did not exhaust his administrative remedies, and summary judgment will be granted on the claims against the EOUSA.

In response to Saldana's January 2006 request to the BOP, the BOP informed Saldana that further searching would incur an estimated fee of $392, and that he could do one of three things — agree to pay, "modify" his "request to meet a lower fee," or settle for the first two free hours of searching. Greene Decl. Att. 3. It is undisputed that Saldana did not either agree to settle for the free search time or to pay the search fee. And Saldana's argument that he accepted the BOP's invitation to modify his request is to no avail. It is not a modified request alone that makes a difference, but only a modified request that reduces the related search fee. Here, too, the record shows unequivocally that Saldana never sent the BOP a modified request that would have reduced the scope of the search and its related fee, as each modification made additional requests without withdrawing any prior requests. Therefore, it is immaterial that the BOP did not receive some of the requests Saldana sent; consequently, Saldana's motion for discovery on the issue of sent and received mail will be denied as futile. Because there is no genuine issue that Saldana did not exhaust his administrative remedies, the BOP is entitled to summary judgment on the claims arising from Saldana's January 2006 request.

The BOP treated Saldana's December 2007 request for recordings of telephone conversations as a new request. Had the BOP treated the request as a modification of the earlier request, it would not have been obligated to respond, as the December 2007 request would have merely expanded the scope of the January 2006 request. The BOP responded to the December 2007 request by telling did Saldana that it did not have the records he sought, which had been

automatically purged.  *Id.* Att. 9.  Saldana did not appeal this response, and therefore he is not entitled to maintain any judicial review of it.

The correspondence Saldana sent to the BOP's FDC in Miami, in which he posed two questions, is not a proper FOIA request because it asked questions instead of seeking existing agency records.  Had the BOP received it, the FOIA would not have required BOP to provide any answers.  The BOP is therefore entitled to judgment on this unexhausted request, as well.

The USMS argues that Saldana's refusal to pay the $40 fee for copying 400 records from its CATS file operates to bar all of his claims as unexhausted.  The USMS cannot prevail on this argument.  The USMS did not rely on any promise from Saldana to pay the $40 in duplicating costs,[5] and Saldana is free to decline an offer to copy records he does not want.  The record evidence shows that Saldana does not want the 400 CATS records.  Bordley Decl. Ex. F ("Your agency provided me with some documents.  The documents that I requested doesn't [sic] correspond to the documents that I am trying to obtain.  I will reformulate my request . . . .").  While his "no thank you" stance as to the 400 CATS records bars any challenge regarding them, it does not deprive him of his right to challenge the adequacy of the search that produced them or to assert challenges with respect to the two other requests he directed to the USMS.[6]

---

[5]  Saldana initially promised to pay duplicating costs, but the record shows that the USMS did not rely on that promise, and expressly stated that "[b]efore we proceed with your request, must have your agreement to pay all fees that may be charged to you for satisfying your request." Bordley Decl. Ex. E.

[6]  Here again, Saldana's attempt to turn his later requests into modifications of his original request is pointless artifice, because the modifications only expanded the scope of his original request.  The USMS did not treat the so-called modifications as such, and nor will the Court.

## II. Searches

The USMS opened three requests for Saldana, Nos. 2004USMS7629, 2005USMS8415, and 2007USMS10808. The FBI also opened three requests for Saldana, Nos. 1014622-000, 1080531-000 and 1104474-000. In response to No. 1014622-000, the FBI admitted to Saldana that it could not find a file that it should have retained. It never again referred to that file. In response to Nos. 1080531-000 and 1104474-000, the FBI reported to Saldana that it did not locate any responsive documents. Only after Saldana filed this lawsuit, prompting the FBI to search again, did the FBI report that it had located responsive documents — in its Miami Field Office — and produce some of them. The USMS was even less straightforward with Saldana. It did not report its missing FRC file until it filed its dispositive motion in this suit.

Saldana challenges the adequacy of the FBI and USMS searches. Most of the arguments he raises are meritless. As an initial matter, there is no reason to think that some of the documents Saldana seeks ever existed, or if they ever did, that they do now. For example, he presumes that a deputy marshal made handwritten notes of an alleged conversation with a judge that allegedly occurred approximately ten years before he made his FOIA request. A challenge to an agency's search because it did not locate documents that may never have been created in the first instance, or may never have been retained as agency records, cannot succeed. An agency's failure to find a particular document does not necessarily indicate that its search was inadequate. *Wilbur v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine v. United States Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). In any case, an agency is not required to conduct interviews, to search in places where the requested documents are not likely to be found, or to search exhaustively. *See Miller,* 779 F.2d at 1383. Saldana's references to searching Deputy

Correal's, or the FBI agent's "internal and external offices" is not only unclear, but ignores the reality of the situation.

Neither agency, however, has adequately addressed the matter of its missing files. The Court cannot discern when the USMS determined that the FRC file was missing and whether it has conducted any subsequent searches for that file. The correspondence between the USMS and Saldana never disclosed that a documented file could not be located, and the Bordley Declaration does not reveal when the USMS learned that the FRC staff could not locate Saldana's file. Given the nature of the information Saldana appears to be seeking, it seems likely that responsive documents, if there are any, would be stored in the FRC file. On the basis of the record as it now stands, the Court cannot conclude that the USMS has conducted a reasonable search as required by the law. As to the FBI's search, while it reported the missing FBIHQ file to Saldana in response to his first request, it has failed to apprise either Saldana or the Court of the current status of that file or any efforts undertaken subsequent to 2005 to locate that file. Without that information, the Court is not in a position to conclude that the FBI's search was a reasonable one in response to the requests made. Accordingly, rulings on the motions filed by the FBI and the USMS will be deferred, and each agency will be required to submit a supplemental declaration that provides a more complete and detailed explanation of the searches it undertook with respect to each of Saldana's FOIA requests and the results of those searches.

## CONCLUSION

For the reasons stated above, the BOP and the EOUSA's motions are granted and each is awarded summary judgment on the claims against it. Saldana's motion for discovery is denied. Ruling on the motions filed by the FBI and USMS will be deferred until after each has

supplemented its declaration to provide additional information about the searches undertaken with respect to each of the three requests that each agency opened in response to Saldana's inquiries.  Accordingly, it is hereby

ORDERED that the BOP's motion [13] is GRANTED; it is

FURTHER ORDERED that the EOUSA's motion [27] is GRANTED; it is

FURTHER ORDERED that the plaintiff's motion for discovery is DENIED; it is

FURTHER ORDERED that ruling on the motions filed by the FBI [28] and the USMS [29] is DEFERRED; and it is

FURTHER ORDERED that the FBI and USMS are each directed to file on or before May 28, 2010, a supplemental declaration that provides a more complete and detailed explanation of the searches it undertook in response to Saldana's requests, with particular attention to the missing files that may contain responsive information.

_____/s/_____
JOHN D. BATES
Date:  April 27, 2010                         United States District Judge